UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

      Plaintiff,

 -vs-                            Case No. 18-CR-95-JDP

MATTHEW SLAUGHTER,              Madison, Wisconsin
                                   July 18, 2019
        Defendant.           1:05 p.m.

_____

STENOGRAPHIC TRANSCRIPT OF SENTENCING
HELD BEFORE CHIEF U.S. DISTRICT JUDGE JAMES D. PETERSON

APPEARANCES:

For the Plaintiff:

                Office of the United States Attorney
                BY:  ELIZABETH ALTMAN
                Assistant United States Attorney
                222 West Washington Avenue, Suite 700
                Madison, Wisconsin  53703

For the Defendant:

                Federal Defender Services of Wisconsin
                BY:  PETER R. MOYERS
                22 East Mifflin Street, Suite 1000
                Madison, Wisconsin  53703

Also appearing:   MATTHEW SLAUGHTER, Defendant
                MARC STIEVE, U.S. Probation Officer
                Special Agent WAYNE JACKOWSKI, FBI

Jennifer L. Dobbratz, RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 410
Madison, Wisconsin  53703
(608) 261-5709

```
 1        (Proceedings called to order at 1:05 p.m.)
 2            THE CLERK:  Case No. 18-CR-95-JDP-1, the United States
 3    of America v. Matthew Slaughter.  Court is called for a
 4    sentencing.
 5        May we have the appearances, please.
 6            MS. ALTMAN:  Good afternoon, Your Honor.  The United
 7    States appears by Elizabeth Altman, and also with me today is
 8    FBI Special Agent Wayne Jackowski.
 9            THE COURT:  Good afternoon to both of you.
10            MR. MOYERS:  Peter Moyers from Federal Defender
11    Services, and Mr. Slaughter is here to my left.
12            THE COURT:  Mr. Slaughter, Mr. Moyers, good afternoon.
13            MR. MOYERS:  Good afternoon.
14            THE COURT:  Katie Cwirla is the probation officer who
15    prepared the presentence report, but she's not able to be with
16    us today, so we have Marc Stieve from the probation office
17    filling in.
18        Let me begin as I usually do with running down the
19    materials I've reviewed in connection with the sentencing.  I've
20    got the presentence report, statements from, I believe, both
21    sides that there were no objections to the presentence report.
22    I've got an addendum to the report and a revised presentence
23    report.  I have a sentencing memorandum on behalf of Mr.
24    Slaughter that also attaches his written allocution, which I've
25    reviewed, and then I also got a victim letter.  I assume that
```

```
1    was a letter from the primary victim in this case?
2            MS. ALTMAN:  She was not the primary victim.
3            THE COURT:  Not the primary victim.
4            MS. ALTMAN:  She was not the victim whose report
5    initially led to the charges.  She was a victim whose contacts
6    and identity was found after getting into the phone.
7            THE COURT:  Okay.  And so do we know -- can you
8    identify for me -- there are several other victims that are
9    identified by initials.
10           MS. ALTMAN:  Yes.
11           THE COURT:  And then one who is identified as
12   "redacted."
13           MS. ALTMAN:  She's "redacted."
14           THE COURT:  Okay.  So this is the "redacted" victim.
15       Did I miss anything, Ms. Altman?
16           MS. ALTMAN:  No, Your Honor.
17           THE COURT:  Mr. Moyers?
18           MR. MOYERS:  You did not.
19           THE COURT:  Mr. Slaughter, I need to make sure that you
20   read the presentence report and the addendum and the revised
21   presentence report and that you discussed those documents with
22   your lawyer.  Have you done that?
23           THE DEFENDANT:  Yes.
24           THE COURT:  I'm going to ask you to pull the microphone
25   over so I can --
```

1          MR. MOYERS:  Sorry.

2          THE DEFENDANT:  Yes.

3          THE COURT:  Thank you.  All right.  Do you have any

4     other concerns with the presentence report?

5          THE DEFENDANT:  No.

6          THE COURT:  I'll adopt the facts in the presentence

7     report as the facts on which I'll base my sentence.  I will

8     accept the plea agreement.  The offense of conviction adequately

9     reflects the defendant's criminal conduct.  The plea agreement

10    does not undermine the statutory purposes of sentencing, and in

11    determining the defendant's sentence, I will take into

12    consideration the advisory sentencing guidelines and the

13    statutory purposes of sentencing that are set out in Title 18 of

14    the United States Code at Section 3553(a).

15        All right.  I should clarify, I think that the government

16    actually did object to the lack of an enhancement on the numbers

17    of images.

18          MS. ALTMAN:  Yes.

19          MR. MOYERS:  Yeah.  And, I mean, they're right.

20          THE COURT:  Okay.  And so I take it that they're right,

21    so in the revised report, the guidelines are correctly

22    calculated reflecting the 14 images.  So let's just make a

23    record of where we ended up on the guidelines for what it's

24    worth here because, for reasons that will become clear, it's not

25    really a driver of the sentence here.

1     So the guideline for possession of child pornography,

2     that's in guideline Section 2G2.2.

3     The base offense level is 18 because the defense -- the

4     defendant is convicted under Section 2252(a)(4).

5     And the defendant pleaded guilty to possessing child

6     pornography, and at least one of the images involved a

7     prepubescent minor or a minor who had not attained the age of

8     12.  Therefore, there are two levels added under subsection

9     (b)(2).

10     The defendant had engaged in a pattern of activity

11     involving sexual abuse or exploitation of a minor.  Defendant

12     specifically had that prior conviction in Dane County,

13     Wisconsin, Case No. 01-CF-2638.  Therefore, five levels are

14     added under subsection (b)(5).

15     The offense involved the use of a computer or interactive

16     computer service for the possession, transmission, receipt, or

17     distribution of the material or for accessing with intent to

18     view the material.  Therefore, two levels are added under

19     (b)(6).

20     The defendant possessed 14 child pornography images.

21     Because the offense involved at least ten but fewer than 150

22     child pornography images, there are two levels added under

23     subsection (b)(7)(A).

24     There aren't any other Chapter Two adjustments.

25     The defendant qualifies for what I think will be three

1    levels of downward adjustment, two levels because he's entered a

2    timely plea, and I think the government is prepared to move for

3    the third level of reduction?

4              MS. ALTMAN:  Yes, Your Honor.

5              THE COURT:  I'll grant that.  So that gives us three

6    levels of downward adjustment.

7         So based on a total offense level of 26, criminal history

8    in category III, the guideline imprisonment range would be 78 to

9    97 months.

10        I do want to make a note that, as I do in virtually all

11   these cases now because the use of the computer or the internet

12   is almost always present, I will adjust the guideline range

13   essentially out of disagreement with the two-level enhancement

14   for the use of the computer.  So that would give the defendant a

15   guideline range based on offense level 24, criminal history

16   category III, that would be 63 to 78 months.  However, the

17   departure has no effect on the guideline range because the

18   guideline range has to be 120 months because this crime has a

19   statutory minimum penalty of ten years.  So that is then what

20   the guideline ends up being.

21        So that's where the guidelines take us as cabined by the

22   mandatory minimum sentence in this case.  So, Ms. Altman, what

23   does the government think I should do?

24             MS. ALTMAN:  Well, Your Honor, the government

25   believes -- I think at this point the question is whether or not

1    he gets concurrent or consecutive time.  I think that's the only

2    question for the Court based on the ten-year mandatory minimum.

3    And before I go into my argument as to why I believe he should

4    get consecutive time, I would be remiss in at least not

5    addressing or commenting on the defendant's sentencing

6    memorandum.  The --

7              THE COURT:  And the consecutive time is to the failure

8    to register charge or the revocation sentence?

9              MS. ALTMAN:  The revocation sentence.

10             THE COURT:  Okay.

11             MS. ALTMAN:  I would preface this comment by stating as

12   strongly as I possibly can that absolutely no person in the

13   whole wide world should be subject to unwanted sexual contact,

14   be it in prison, be it out of prison, no matter what.  I think

15   everyone in the room knows that I'm about as strong a victim

16   advocate as there can be, but the idea that the defendant is

17   asking as a mitigating factor and arguing as a mitigating factor

18   the idea that he was allegedly sexually assaulted one time in

19   prison when the reason he was in prison was for repeatedly

20   sexually assaulting a 6- to 7-year-old girl in his home borders

21   on disingenuous at best and offensive at worst.

22       With regard to whether the sentence should be concurrent or

23   consecutive, I believe there's three reasons why it should be

24   consecutive.  First of all, the original sentence was imposed

25   and stayed, so what the state court judge was saying was that he

1    was punishing him -- or she I guess; I don't know whether it's a

2    man or woman -- he was getting punished on that charge.  That is

3    what that court did.  No matter what he was going to be revoked

4    for, he was going in for eight years, whether it was drinking or

5    absconding or not following the conditions of his supervised

6    release or whatever -- whatever he did that led to a revocation,

7    he was going to get the eight years.  So it absolutely takes

8    nothing into consideration about this offense and this conduct.

9    The judge didn't consider that when sentencing him due to the

10   fact that it was an imposed-and-stayed sentence.

11        And that leads me --

12            THE COURT:  And if you would, point to me where that

13   result -- where that result is clear?

14            MS. ALTMAN:  In paragraph 61 he was sentenced to 20

15   years probation, one year with work release, eight years prison

16   imposed and stayed.

17            THE COURT:  Eight years prison -- oh, okay.  That's the

18   imposed and stayed.  Okay.

19            MS. ALTMAN:  Yes.  And so that's what he got sentenced

20   to when he got revoked for the conduct in this case was that

21   eight years, so there's no way, considering he was sentenced to

22   it in 2002 originally when he was sentenced in this case, that

23   the conduct in this case could have been considered.

24            THE COURT:  Understood.

25            MS. ALTMAN:  So that takes me to my second point, and

1    that is that this case has new victims, and it doesn't just have

2    one new victim.  It has multiple victims, and they're young.

3    They're 12.  They're 13.  And he's telling one of the

4    13-year-olds, who was the one -- KV No. 1, the one whose phone

5    led to this, he's telling this 13-year-old -- he's telling her

6    to lie.  He's telling her to tell her parents it wasn't him.

7    He's telling her to protect him.  He's telling her not to say

8    anything, to a 13-year-old.  She says "You should have come and

9    gotten me and we could have run away together," so there was

10   obviously some conversation about that.  Not only did we have

11   that contact with the first victim, the one who started this,

12   then we get his phone, and there's contact with all of these

13   other victims that we find in the phone.

14       I think that sometimes people forget or don't realize that

15   internet victims are affected as well.  I mean, obviously this

16   is not hands-on conduct, no question about that, but as the

17   victim/witness -- or the victim statement from the last victim

18   whose information is redacted says, this did have an effect on

19   her.  It says that he supported her self-harm.  He left her with

20   trust issues.  He set low -- she set low standards after him

21   because "he made me believe I already had low standards."  So

22   this is how this 12 or 13-year-old is starting her life and her

23   sexual future is with this in mind.

24       And then the third reason I would ask the Court to sentence

25   him consecutively is that the Court should protect the

1  community.  The defendant knew he was facing eight years if he

2  was revoked.  He was given an imposed and stayed sentence.  He

3  knew exactly what the ramifications were going to be if he got

4  caught.  He told KV No. 1 he would be going to prison if he got

5  caught and to look him up on the registry.  He talks to the

6  victim who's in Paragraph No. 23, he talks to her about the

7  possibility of being revoked.  He knew what he was doing was

8  wrong.  He knew what he was looking at if he got caught.  He

9  continued to do it.  It didn't deter him.  He's got multiple

10  victims, and the community needs to be protected from him for as

11  long as possible, and 12 and 13-year-old girls deserve that.  He

12  met them on Google Hangouts, and that's just not okay.  And to

13  protect the community for as long as possible, I would request

14  the sentence be consecutive to that eight-year sentence.

15          THE COURT:  And when does that eight-year sentence

16  begin?  That was two years ago when he was --

17          MS. ALTMAN:  I think so, yes.  I think he has a release

18  date of 20 --

19          MR. MOYERS:  25.

20          MS. ALTMAN:  -- 25.

21          THE COURT:  And that's all laid out in paragraph 61 at

22  the beginning there?

23          MR. MOYERS:  Yes.  And I think Ms. Cwirla --

24          MS. ALTMAN:  His mandatory release date is April 17th

25  of 2025 in paragraph 61.

1          THE COURT:  Okay.  And under -- I'm no expert in state

2    sentencing law, so under current sentencing -- or under the

3    sentence that Mr. Slaughter faces, is that mandatory release

4    date, is that likely to be roughly the release date?  Under old

5    sentencing law, of course, that was the last of a long window

6    for release.

7          MS. ALTMAN:  I don't know.

8          THE COURT:  Mr. Moyers, do you know?

9          MR. MOYERS:  No.  Just that my general experience is

10   that, yeah, unless there's something in there, that's when

11   they've got to kick them out.

12         THE COURT:  Okay.  All right.  I may pivot back to you.

13   And is Mr. Slaughter in state custody or federal custody at the

14   moment?

15         MS. ALTMAN:  State.

16         MR. MOYERS:  State.

17         THE COURT:  State?

18      All right.  Mr. Moyers?

19         MR. MOYERS:  I'm just going to make two additional

20   points on top of my sentencing memorandum.

21         THE COURT:  I think I'm going to ask you --

22         MR. MOYERS:  Pardon.

23         THE COURT:  Our sound is a little low today, but why

24   don't you pull the microphone a little closer to you.

25         MR. MOYERS:  The first is I'm with Ms. Altman on how

1    terrible and how awful some of these crimes are or all of them

2    are.  This is -- you know, we have a gentleman who started this

3    pretty early, went in, came out, and if hadn't been, I guess,

4    caught by -- or if the law enforcement in Indiana -- is that

5    right?

6              THE COURT:  Yes.

7              MR. MOYERS:  -- Indiana, I mean, yeah, would have

8    gotten worse.  And so Ms. Altman is exactly right, and I think

9    what that does show though is -- and maybe that's her -- and

10   that's her job is to protect victims, and the easy way of

11   thinking about it is, well, we've got victims who are minors,

12   you know, who, whether we want to say it or not, like, they

13   don't deserve it, and when you commit crimes, you're less

14   important.  And that may be true.  That may be the thought that,

15   look, between the people on the outside and people on the

16   inside, the law needs to -- I mean, maybe protection is

17   redistributing protection towards people on the outside and

18   making people on the inside bare it.

19        But I think, and this is why I brought up the Prison Rape

20   Elimination Act, is that at least Congress is starting to

21   acknowledge that it's all one community, it's all one public,

22   and that people get out and that we can't just -- as much as our

23   impulse might be to just say "Throw him away and throw away the

24   key" and not think about it, we can't do that because that's not

25   making us, even people on the outside, as safe as they ought to

1    be.

2              THE COURT:  I agree with that.

3              MR. MOYERS:  Yeah.  And so -- and I don't have -- and I

4    guess the final point I would make here, my hope is, and maybe

5    you can explain this a little to him when you tell him about

6    your sentence and judgment, is he's got to learn to trust his

7    probation officer.  One of the things that came up in this case

8    is that all of his records from sex offender treatment get into

9    the presentence report, and that to him is -- I mean, it's true.

10   He was participating.  That's what he said.  It's just that I

11   want him to trust both the, you know, federal options, because

12   he's going to do federal time, and to trust his probation

13   officer and that he shouldn't just clam up or say, "Well, look,

14   by going through this program, now I've just, you know, allowed

15   myself to be vilified in a presentence report," and I think he

16   gets that in his letter by saying, "Look, I've got to be able to

17   trust people and ask for help."

18         And so, you know, if you could underscore what I've

19   underscored to him, which is federal probation is totally

20   different and the programming, at least in the federal system,

21   is going to be a lot more robust.  And so I'd leave it with

22   those two.

23              THE COURT:  All right.  Ms. Altman, maybe you can

24   illuminate this a little bit because Mr. Moyers makes a fair

25   point that normally the disclosures that somebody on supervision

```
1    makes when they're in treatment or on supervision in advance of
2    a polygraph, those statements are used in aid to provide
3    treatment to the person who's being supervised or in counseling.
4    So now I've got a presentence report that's chock-full of those
5    statements that indicates that there are 75 victims in one
6    paragraph.  And so I'm not sure it's entirely fair or healthy
7    for me to be relying on his statements that were supposed to be
8    made in support of his treatment when I come to sentencing, and
9    so -- and you haven't really pressed too hard on that.  We've
10   got the victims that were disclosed as a result of the
11   investigation in this case.  Those seem to be appropriate for my
12   consideration, but I feel uneasy about saying, like, "I should
13   sentence Mr. Slaughter on the basis of disclosures that he made
14   when he was trying to get treatment."
15          MS. ALTMAN:  I understand that, Your Honor, and that's
16   why I didn't argue that point.  My point is that what you have
17   from what was in the phone, his conduct with these girls,
18   warrants it in and of itself.
19          THE COURT:  Yeah.  Well, I agree with that.  I mean,
20   it's hard to unsee something as dramatic as the descriptions
21   that are in the presentence report, but it does seem to me only
22   fair to say, "Look, that was for his treatment and that
23   shouldn't be held against him," because I don't want him to be
24   distrustful of the people who will be trying to help him at some
25   point.
```

1        I gather that was your -- your point, Mr. Moyers.  It

2    sounds like we're all in agreement with --

3            MR. MOYERS:  Yeah.  Because, look, it's hard to

4    argue -- it's also very valuable information.  I can't tell you,

5    like, "Oh, it was for treatment, don't consider any of it."  I

6    mean, if I were in your shoes, I would want the information,

7    and, frankly, I would expect -- I mean, the law asks you to do

8    this all the time when you make rulings is "I have to put that

9    to the side for now."  And so, yeah, it's hard to unsee things,

10   but also I think anyway, at least from his letter, he

11   acknowledges "I'm willing to, you know, trust again because I

12   know that's -- doing this on my own is going to -- you know, is

13   not going to work out."  So I would leave it at that.

14           MS. ALTMAN:  Can I make one follow-up to my statement,

15   Your Honor?

16           THE COURT:  Yes.

17           MS. ALTMAN:  I don't think that you should consider the

18   underlying disclosures or anything like that in your sentence,

19   but I think what you should and could consider is the fact that

20   he went through sex offender treatment and continued to offend,

21   and I think that's -- to that extent, I think it is valid to

22   consider.

23           THE COURT:  I agree with that too.  I think from my

24   questions or comments you see the point that I'm making, which

25   is --

1          MS. ALTMAN:  Absolutely.

2          THE COURT:  -- when he's trying to be honest in

3     treatment, I don't think that I should gauge his punishment to

4     those disclosures.

5          MS. ALTMAN:  Absolutely.

6          THE COURT:  That's not really what he's before me.  Of

7     course, I have to evaluate and look at the person that I have,

8     and so I have information about Mr. Slaughter and his

9     background, and, of course, the law tells me I have to consider

10    the character of the defendant, but I want to make clear that

11    I'm not sentencing him for the things that he disclosed in his

12    treatment or related to the polygraph examinations that he

13    undertook.

14        All right.  Mr. Slaughter, I got your written allocution,

15    but you've got the right to address the Court before I decide on

16    your sentence.  You don't have to say anything, but if you have

17    anything to add, I'd like to hear it.  Do you have anything else

18    you want to say?

19          THE DEFENDANT:  Yeah.

20          THE COURT:  Go ahead.  I'm all ears.

21          THE DEFENDANT:  I know I need help, and I'll get that

22    help.  I spent a long time doing wrong, and I've got time to do

23    right, and whatever time I have, I will spend it every day doing

24    the right thing even -- it's harder in there to follow the rules

25    and to do the right things, and you're almost considered an

1      outcast when you're not doing criminal stuff, and I'd rather be

2      an outcast in there trying to do good so that I can be good

3      later and spend the rest of my time doing what I've got to do,

4      stay in the Bible, put God first -- that's what I've never

5      done -- and just not create another victim until the day I die.

6      Thank you.

7                  THE COURT:  All right.  Thank you.

8            All right.  I'm going to take a short recess.  I'll come

9      back, and we'll finish up.

10                 THE CLERK:  All rise.

11           (Recess at 1:29 p.m. until 1:36 p.m.)

12                 THE COURT:  Let me start out by acknowledging a point

13     that Mr. Moyers made in his sentencing memo and that Ms. Altman,

14     I think, fairly addressed and accurately addressed, and that is

15     no one should be sexually assaulted while they're in prison.

16     And I recognize that it's a risk.  I think that Congress

17     recognizes that it's a risk, and that's why they passed the

18     Prison Rape Elimination Act.  It's just I sentence people to

19     long terms in prison, but I do not sentence people to be abused

20     or sexually assaulted in prison, and when I find out that

21     somebody that I sentenced has been abused or assaulted in

22     prison, I always contact the warden to find out what happened.

23     I don't always get a satisfactory answer, but I consider it to

24     be part of my obligation as the sentencing judge to do what I

25     can to see that the people who are sentenced get the sentence

1    they impose and that their safety and well-being is cared for.

2         I think Mr. Moyers' basic argument is that for somebody who

3    is vulnerable to a sexual assault in prison, a prison term is

4    basically harsher punishment than it is for the normal person or

5    the average person.  I don't know that Mr. Slaughter really

6    falls into that category.  I'm not doubting his description of

7    what happened in the presentence report.  I do think that Mr.

8    Slaughter is a member of a disfavored prison population.  Those

9    who are convicted of sex crimes against children do face a base

10   level of risk from other prisoners, and a lot of times the sex

11   offenders are themselves very broken, vulnerable people, and so

12   they're vulnerable to assault because they're smaller and weaker

13   and less powerful and intimidating.  I don't think that applies

14   to Mr. Slaughter.  You know, he is not in that category of the

15   weakest and most vulnerable people that I sentence.  He is, I

16   acknowledge, at a greater risk of assault because of the fact

17   that he is a sex offender and they are, as I said, a disfavored

18   prison population.

19        Should I hear about anything that happens to Mr. Slaughter,

20   I will do what I always do, and I will contact the warden and

21   try to find out what has happened.  But I can't really agree

22   that the fact that Mr. Slaughter has been victimized in the

23   state system really somehow puts him beyond the authority of the

24   Court to impose a sentence of incarceration.  He doesn't get a

25   free pass and avoid the congressionally-mandated punishment

1    because he's been the victim himself.  So it's a long way of

2    saying I take the concern that Mr. Moyers raises very seriously,

3    but it really is not a substantially successful argument in

4    mitigation in this case.

5         Let me also say that I don't think the guidelines are

6    really -- for that matter, really the mandatory minimums -- are

7    really very helpful to me here in crafting a just sentence.  The

8    guidelines capture the offense in a sense.  They capture the

9    offense of possessing child pornography, but the real harm in

10   this case that befell the main victim and the secondary victims

11   I'll call them, the other young ladies that Mr. Slaughter was

12   communicating with, the harm to them is not the images.  It's

13   how he got the images and the emotional cruelty that he

14   inflicted on them.  And so it's bad enough to have the pictures

15   and to have them around.  The victim who wrote to me said

16   something about the pictures being available on the internet.

17   As far as I know -- Ms. Altman, you can correct me if I'm

18   wrong -- there's no evidence here that the photographs were

19   circulated or distributed in any way.

20             OFFICER STIEVE:  No.

21             MS. ALTMAN:  I don't think so.  No, Your Honor.

22             THE COURT:  So I don't know that that's the case, so

23   that's not part of the offense here.  That would be a

24   significant aggravating factor were it true, but we have no

25   evidence to suggest that.  But the real harm that befell these

1      victims was that Mr. Slaughter exploited their emotional

2      vulnerability for your own purposes of getting sexually

3      gratifying material.  You told these little girls that you love

4      them and you drove a wedge between them and their parents, and

5      they were on the internet looking for companionship because for

6      some reason they felt lonely or upset, and you lied to them to

7      get them to send you pornographic pictures of themselves, or at

8      least of KV1.  There's a pretty strong suggestion that other at

9      least naked pictures were sent from the other victims as well.

10     So the guidelines don't really capture that aspect of the harm

11     that you inflicted on your victims, and, frankly, the offense of

12     conviction doesn't really capture that either because you got --

13     the offense of conviction and the mandatory minimum is driven

14     because there was a picture of somebody younger than 12 or

15     prepubescent and because of your prior conviction.  So we're not

16     really capturing what you did to those girls.

17         So when I turn to the 3553(a) factors, which are really

18     just kind of a common-sense framework to consider the things

19     that a thoughtful judge would consider in sentencing, I look at

20     your background and your character.  Honestly, you had an

21     exemplary childhood in a lot of ways.  It wasn't without the

22     ordinary pains of growing up, but you came from a really good

23     family.  They provided for you.  They took care of you.  I

24     have -- the gentleman that I sentenced this morning had an

25     abysmal, horrible childhood.  You didn't have that.  So there's

1    nothing in your background that provides some mitigating story

2    of the genesis of your problems.

3         And, of course, I have a demonstrated history of hands-on

4    sex offenses against children with your earlier conviction,

5    which is highly aggravating.  So you can't make the argument

6    that you're just a looker and not a toucher.  And then you

7    committed this offense after that conviction while you were on

8    supervision while we're trying to monitor you so we make sure we

9    don't have any more victims, and you commit it after you've had

10   pretty much all the sex offender treatment that the state has to

11   offer.

12        So when I look at the particular damaging -- particularly

13   damaging conduct here and your background, I have to say I

14   recognize that not only do I have to provide appropriate

15   punishment to you, but I have to recognize right now that you're

16   really a dangerous predator, and so at the moment I have to say

17   you're just such a dangerous person that I have to really

18   incapacitate you.  I have to put you somewhere where you can't

19   do this again.  The mandatory minimum sentence here of ten years

20   would be nowhere near enough, okay?  So this is almost a

21   statutory maximum case.  You know, in this category of offenses,

22   you're kind of in the area where, you know, I just have to say

23   we've done what we can to try to help you overcome your

24   problems, so I don't have any confidence that this crime won't

25   be recommitted.  I'm not somebody who really has such a dismal

1    outlook on life or on human nature that thinks that there's no

2    possibility of human transformation, but you don't present

3    yourself as a very good bet at the moment.

4         The saving grace, if there is one, is that the mandatory

5    minimum is not the only sentence you're facing.  Ms. Altman is

6    right.  It's not for this conduct -- the eight years that was

7    imposed and stayed was for other conduct -- but it's going to be

8    a sentence that you'll serve, and so if I make this sentence

9    concurrent -- I'm sorry, consecutive to the state sentence, the

10   total protection of the public that we're getting is more than

11   the ten years.

12        And so I still have to be guided -- even by a person who

13   concerns me as deeply as you do, I'm still guided by the

14   principle that I impose a sentence that's no greater than

15   necessary to serve the purposes of sentencing, so if I look at

16   the total sentence in the sense of the total time that the

17   public will be protected from you, I'm looking at about 18 years

18   probably from about the time of the arrest, and I think that

19   that is an adequate sentence.  So because of that other sentence

20   which -- and I will make your sentence run consecutive to that

21   one -- that, I believe, is an adequate period of protection of

22   the public, and it provides you a long period to transform

23   yourself, and I hope you can do it.

24        I think you'd have to be honest with yourself and with me

25   to say you've given me no cause for optimism so far other than

1    what sounds like a sincere expression of aspiration that you

2    won't create any more victims.  I hope that's true.  I think

3    you'll understand why I'm skeptical about it because you've

4    accomplished a lot of what you've accomplished by lying to

5    people, and so you have to be kind of good at it to get

6    13-year-old girls to send pictures of their most private parts

7    to you, but I'm optimistic by nature I guess.  So I hope that

8    you're sincere about this, you know, that you're not a complete

9    sociopath and that you do care about people and that you care

10   about these people that you're injuring and that you don't want

11   to hurt any more people.

12        I hope you embrace your treatment.  Like I said, you've had

13   as much as the state has to offer.  I don't know that federal

14   supervision is really totally different.  I like to think that

15   we have a lot more resources in the federal system for

16   supervision.  Case loads are lighter, so we do have more

17   resources, but the sex offender treatment -- maybe you'll get a

18   little more personalized attention, but the sex offender

19   treatment is going to be kind of of the same nature.  You'll

20   have polygraph examinations.  You'll have to disclose your very

21   intimate things.  You'll have to check in with your officer.

22        But I will share this with you:  I express to the people

23   who work for the Court -- and in the federal system the

24   supervising agents work for the Court.  They don't work for the

25   Department of Corrections or the Bureau of Prisons.  They work

1    for the Court.  It's my perspective and it's the perspective of

2    everybody that I know who works for the Court in the probation

3    office that their objective is to assist their clients in

4    achieving a successful, lawful life.  They also think job one is

5    protecting the public, as I do, but they're not there to trip

6    people up on minor technical violations and send them back to

7    prison.  They regard a revocation as a failure.  We'll do it if

8    necessary to protect the public or to punish defiance, but the

9    basic idea of supervision in the federal system and this court

10   is to help you live a law-abiding life and to not have any more

11   victims, which is what you're telling me today is what you want

12   to accomplish for yourself.  So when it comes time to embrace

13   your supervision, I encourage you to take a different

14   perspective and to view the person who's charged with

15   supervising you as a resource who is trying to help you and not

16   an adversary.

17       I'm prepared to impose the conditions that are recommended

18   in the presentence report, and those conditions, just for the

19   record, are conditions 1 through 9 and 11 through 25.  I didn't

20   get any objections to them before, but I'll ask now, Mr. Moyers,

21   do you have any objections to the conditions?

22            MR. MOYERS:  No.  These are the standard ones for cases

23   like this.

24            THE COURT:  All right.  Mr. Slaughter, have you

25   reviewed the conditions?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Do you feel that you understand them?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Would you like me to read these conditions

5   into the record now or would you waive the reading?

6        MR. MOYERS:  We'd waive reading.

7        THE COURT:  All right.  It's a tedious exercise to do

8   that.  Better to go over them in writing when you've got your

9   lawyer there to look through them, and you're telling me that

10   you understand them now.  Those will guide your conduct when

11   you're on supervision.

12      Do you need any further justification for the conditions,

13   Mr. Moyers?

14        MR. MOYERS:  We do not.

15        THE COURT:  I'll say one last thing about them:  They

16   can be adjusted.  During your supervision, if they need to be

17   changed or adjusted -- if you're doing well, you can have some

18   taken away.  If you need more help, more can be added.  So you

19   can make a motion to the Court to change the conditions.  The

20   government or the probation office can do the same thing.  So

21   they're not permanent.  They can be adjusted as needed.

22      The term of supervision will be 25 years.  I impose a long

23   term because all the reasons that I have presented that make me

24   somewhat pessimistic about your chances of success are reasons

25   that a long supervision is necessary to make sure that we don't

1    have more victims.

2         The current offense isn't drug related, but you do have a

3    history of drug use and alcohol abuse, so I won't be waiving the

4    mandatory drug testing.  Treatment and drug testing are

5    addressed in Special Condition No. 17.

6         It is adjudged that you are to pay the mandatory $100

7    criminal assessment penalty to the Clerk of Court for the

8    Western District of Wisconsin immediately following sentencing.

9         And I've got a slot in here for restitution, but I haven't

10   heard anything about any request for restitution.  I heard very

11   little from the victim, so I'm kind of assuming, but I'll ask

12   the government to confirm, that there's no request for

13   restitution.

14              MS. ALTMAN:  We haven't gotten any request, Your Honor.

15              THE COURT:  All right.  So is it all right -- I can

16   leave it open if you think there's more to come, but if there's

17   no need to leave it open, I'll just resolve it here.

18              MS. ALTMAN:  You can just resolve it.

19              THE COURT:  All right.

20              MS. ALTMAN:  Thank you.

21              THE COURT:  Because the victims have not requested

22   restitution, I will not impose any order of restitution.

23        The defendant does not have the means to pay a fine under

24   guideline Section 5E1.2(c) without impairing his ability to

25   support himself upon release from custody, so I will impose no

1    fine.

2         There was some property seized from the defendant reflected

3    in the forfeiture order, and so I will enter a final order of

4    forfeiture for that property.

5         And, Ms. Altman, I don't know, you've seen the presentence

6    report and the information about the financial assessment.  I

7    believe the defendant is indigent, and so I would waive the

8    $5,000 special assessment for Justice for Victims of Trafficking

9    Act.  I don't think --

10         MS. ALTMAN:  I would agree.

11         THE COURT:  -- that he's got anything.  All right.  I

12    will waive that $5,000 special assessment.

13         The probation office is to notify local law enforcement

14    agencies and the state attorney general of the defendant's

15    release to the community.

16         I don't think there are any counts to be dismissed.  It's a

17    one-count indictment.

18         And, Mr. Slaughter, you have entered, if I recall, a

19    conditional plea.  It reserves the right to appeal the order --

20    my order on the suppression motion; is that right?

21         MR. MOYERS:  That's correct, Your Honor.

22         THE COURT:  Okay.  So you have the right -- you've

23    reserved the right to appeal that decision, and if there's some

24    other reason that your plea was involuntary or unlawful, you'd

25    have the right to appeal your conviction on those two bases.

1   You'd also have the right to appeal the sentence that I've just

2   imposed.  If you want to file an appeal on any grounds, you have

3   to do it within the deadlines, and the deadlines are 14 days

4   from entry of judgment or within 14 days of any notice of appeal

5   that would be filed by the government if they were to appeal.

6       If you can't afford the filing fee for the appeal, you can

7   apply for leave to appeal *in forma pauperis*, which just means

8   without paying the filing fee.  If you can't afford an attorney

9   to represent you in the appeal, you can apply for

10  court-appointed counsel at government expense.

11      I think I have covered everything.  Oh, let me say this,

12  that I will recommend that, of course, Mr. Slaughter receive sex

13  offender treatment programming while he's incarcerated.  I'll

14  also recommend that he receive substance abuse assessment and

15  appropriate treatment for that and that he be afforded the

16  opportunity to participate in educational and vocational

17  programming.

18      Any other recommendations you'd like me to make, Mr.

19  Moyers?

20          MR. MOYERS:  That will do it.

21          THE COURT:  Okay.  All right.  I think I'm finished.

22  Ms. Altman, anything else?

23          MS. ALTMAN:  Nothing, Your Honor.

24          THE COURT:  Mr. Moyers?

25          MR. MOYERS:  We got it all.

```
1              THE COURT:  And from the probation office?

2              OFFICER STIEVE:  Just to be thorough, Your Honor, did

3       you touch base on whether or not the pending matters would run

4       concurrent or consecutive?

5              THE COURT:  That's a good question.  I think there's

6       one left.  That's the failure to register as a sex offender?

7              MR. MOYERS:  Oh, yeah.

8              THE COURT:  All right.  I don't know if either of you

9       have any idea of what's likely to happen with that charge.

10      That's going to be in -- Ms. Altman, do you have --

11             MS. ALTMAN:  I don't have any idea.

12             THE COURT:  -- any idea?  I'm inclined to make --

13      because we have kind of a comprehensive sentencing scheme, I'm

14      inclined to order that my sentence run concurrent to whatever

15      happens on that one.

16             MS. ALTMAN:  That's fine.  No objection.

17             THE COURT:  All right.  I will order that my sentence

18      will run concurrent to any sentence that Mr. Slaughter would

19      receive on the paragraph --

20             MR. MOYERS:  71.

21             MS. ALTMAN:  71.

22             THE COURT:  -- paragraph 71, failure to register as a

23      sex offender.  That's the Winnebago County, Illinois, Case

24      16-CF-3218.  Thank you, Mr. Stieve.

25          Okay.  Are we done now?
```

1          MR. MOYERS:  Yes.

2          OFFICER STIEVE:  Yes, sir.

3          THE COURT:  All right.  Thank you, all.

4          MS. ALTMAN:  Thank you.

5          THE CLERK:  All rise.  Court stands adjourned.

6      (Proceedings concluded at 1:55 p.m.)

7                          ***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2    Reporter in and for the State of Wisconsin, certify that the

3    foregoing is a true and accurate record of the proceedings held

4    on the 18th day of July, 2019, before the Honorable

5    James D. Peterson, Chief U.S. District Judge for the Western

6    District of Wisconsin, in my presence and reduced to writing in

7    accordance with my stenographic notes made at said time and

8    place.

9        Dated this 15th day of August, 2019.

10

11

12

13

14

15                          _____/s/ Jennifer L. Dobbratz_____

16                          Jennifer L. Dobbratz, RMR, CRR, CRC
                                  Federal Court Reporter
17

18

19

20

21

22

23

24    The foregoing certification of this transcript does not apply to
     any reproduction of the same by any means unless under the
25    direct control and/or direction of the certifying reporter.